IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRIGNIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:   RONALD HENRY McPHEE and<br>         DEBORAH MAE McPHEE,<br>              Debtors. | Case No. 13-36046-KRH<br>Chapter 13 |

## MEMORANDUM OPINION

Before the Court is the objection (the "Objection") of the Chapter 13 Trustee, Carl M. Bates (the "Trustee") to the Chapter 13 Plan (the "Plan") of Ronald and Deborah McPhee (the "Debtors"). The Objection asserts that the Debtors' Plan cannot be confirmed on the grounds that the Debtors failed to include income they receive in the form of Canadian Old Age Security ("OAS") benefits in their calculation of current monthly income. The Court finds that a Treaty in effect between the United States and Canada mandates reciprocal treatment of government retirement benefits between the two countries. As the Bankruptcy Code excludes from the calculation of current monthly income any benefits received under the Social Security Act, 42 U.S.C. §§ 301, et seq. (the "Social Security Act"), the Treaty between the two countries requires that Canadian social security benefits be excluded as well. Accordingly, the Court will overrule the Trustee's Objection and confirm the Debtors' Plan. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]

The Court has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed R. Bankr. P. 7052.

the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L) and (O) in which final orders or judgments may be entered by a bankruptcy judge. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

The Debtors filed a voluntary petition (the "Petition") under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on November 6, 2013 (the "Petition Date"). The Debtors filed along with their Petition the requisite Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period of Disposable Income utilizing the Official Form 22C ("Form B22C"). Fed. R. Bankr. P. 1007(b)(6). On November 14, 2013, the Debtors filed their Chapter 13 Plan with the Court. Fed. R. Bankr. P. 3015(b). As the Debtors' annualized current monthly income is greater than the median income for a family of the Debtors' size in Virginia, the Debtors are classified as "above median debtors" for purposes of this bankruptcy case. The Debtors' amended Form B22C shows combined disposable income of $931.65 per month. The Debtors have unsecured claims that total $230,531.00. The Debtors propose to pay $58,190.75 into the Plan over the applicable commitment period.[2] The proposed total payments under the Debtors' Plan are estimated to yield a dividend to the Debtors' unsecured creditors of approximately 21%.

The basis for the Trustee's Objection to confirmation of the Debtors' Plan is that the Debtors are proposing to pay less than the full amount of their projected disposable income under the Plan. The Trustee argues that the Plan payments should be calculated to include the OAS retirement benefits that the Debtors receive from the Canadian government.

---

[2] The "applicable commitment period" for above median debtors is five years. 11 U.S.C. § 1325(b)(4)(A). The Plan payments will be made by the Debtors in monthly installments of $1,390 for the first five months of the Plan followed by monthly installments $931.65 for the remaining 55 months of the Plan.

Section 1325 of the Bankruptcy Code governs confirmation of a debtor's Chapter 13 Plan. Section 1325(b)(1) prohibits the court from confirming a plan over the objection of the trustee unless the plan provides that all the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. Because the Debtors' unsecured creditors are not being paid in full under the Debtors' Plan, the Debtors must commit all of their projected disposable income throughout the applicable commitment period to the repayment effort. Section 1325(b) of the Bankruptcy Code details the manner in which a debtor's disposable income must be calculated. Disposable income is derived by subtracting those amounts reasonably necessary to be expended[3] from the debtor's current monthly income. 11 U.S.C. § 1325(b)(2). "[C]urrent monthly income" is defined in the Bankruptcy Code as "the average monthly income from all sources that the debtor receives (or in a joint case, the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the six-month period" prior to the Petition Date. 11 U.S.C. § 101(10A)(A). The definition of current monthly income specifically excludes benefits received under the Social Security Act. 11 U.S.C. § 101(10A)(B).

The Debtors provided their calculation of current monthly income, as they were required to do, on an amended Form B22C filed in this case.[4] As of the Petition Date, the Debtors were receiving U.S. Social Security Retirement Insurance benefits in the total amount of $1,750.70 per month. The Debtors also were receiving retirement benefits under the Canadian Old Age

---

[3] The Debtors are required to calculate "amounts reasonably necessary to be expended" in accordance with subparagraphs (A) and (B) of section 707(b)(2) of the Bankruptcy Code. There is no dispute in this case that the calculation of amounts reasonably necessary to be expended was performed correctly.

[4] Bankruptcy Rule 1007(b)(6) requires a debtor in a Chapter 13 case to file a statement of current monthly income prepared as prescribed by the appropriate Official Form.

Security Act in the amount of $905.53 per month and under the Canada Pension Act in the amount of $725.96 per month, for a combined monthly Canadian retirement benefit of $1,631.49.[5]  The Debtors excluded their Canadian retirement benefits just as they did their U.S. Social Security Retirement benefits from the calculation of current monthly income that they used to derive the $931.65 disposable income figure set forth on their amended Form B22C.

The Trustee argues that the plain language of the Bankruptcy Code permits the exclusion of Social Security benefits received under the Social Security Act from the calculation of current monthly income, but nothing more.  For example, the Trustee argues, other types of disability and retirement benefits are not excluded.  The Trustee maintains that the Debtors' OAS retirement income must be included in the calculations of current monthly income and projected disposable income listed on Official Form B22C.  The Trustee argues that the Bankruptcy Code is very clear on the inclusion of this income in the definition.  Inclusion of this income in an amended plan would effectively increase the dividend that the unsecured creditors could expect to receive in this case from 21% to 67%.[6]

The Debtors, who are dual citizens of the United States and Canada, currently reside in the United States.  The Debtors began their professional careers in Canada in the late 1950s.  They moved to the United States in 1988.  They worked in the United States from 1989 until 2006 when they both retired.  The Debtors have contributed to both countries' Social Security programs.  The Debtors are now over the age of 65 and they receive benefits from both nations' old-age social insurance programs.  The Debtors' United States Social Security payments are

---

[5]  All dollar amounts are in U.S. dollars.

[6]  If the Canadian retirement benefits are included in the calculation of projected disposable income, then the Debtors would be required to contribute an additional $97,889.40 into the Plan.

adjusted by the Social Security Administration to account for their Canadian Social Security payments. The Debtors argue that, as their U.S. benefits are already reduced by the Social Security Administration to account for the Canadian benefits they receive, the Canadian benefits should be treated as interchangeable with U.S. Social Security under the Bankruptcy Code. They maintain that the inclusion of the Canadian benefits in the Debtors' calculation of current monthly income would effectively amount to an inclusion of U.S. benefits, which is clearly prohibited by the Bankruptcy Code.

Both the United States and Canada have established social insurance programs to provide a dependable source of monthly income for their elderly citizens. *Helvering v. Davis*, 301 U.S. 619, 641-42 (1937); Canada Pension Plan, R.S.C. 1985, c. C-8 s. 3(1). The United States and Canada signed a treaty in 1981, which became effective on August 1, 1984, providing for the equal treatment of each nation's benefits under their respective social insurance programs under the laws of both nations. Agreement with Respect to Social Security, U.S.-Can., Mar. 11, 1981, 35 U.S.T. 3403, TIAS 10 8 63, 1469 UNTS 249 (the "Treaty"). The Treaty is an international bilateral agreement that remains in effect between the countries. Treaties in Force, U.S. Dept. of State (2013). Article IV of the Treaty provides: "Unless otherwise provided in this Agreement, the persons designated in Article III (A), (B), (C) or (D) who reside in the territory of either Contracting State shall, in the application of the laws of the Contracting State, receive equal treatment, with respect to the payment of benefits, with the nationals of the Contracting State." Treaty, art. IV § 1, Mar. 11, 1981, 35 U.S.T. 3403, TIAS 10 8 63, 1469 UNTS 249. "Benefit" is defined in the Treaty as "any benefit provided for under the laws of either Contracting State." *Id.* art. I § 7. The United States law to which the defined term "benefit" refers is identified in Article II of the Treaty as "the Social Security Act and regulations pertaining thereto." The

Canadian laws to which the defined term "benefit" refers are identified in Article II of the Treaty as the Old Age Security Act and the Canadian Pension Act and regulations pertaining to both.

The Trustee does not dispute that Social Security income is excluded from the calculation of projected disposable income under Chapter 13 of the Bankruptcy Code. *Ranta v. Gorman*, 721 F.3d 231, 235 (4th Cir. 2013). The exclusion serves to insure that elderly debtors will be able to rely on the availability of their social insurance benefit no matter how dire their financial circumstance. *In re Kramer*, 697 F.3d 1314, 1319 (10th Cir. 2012); *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011), *cert denied* 132 S.Ct. 997 (U.S. 2012); *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010).

The Canadian benefits that the Debtors receive must be excluded from the calculation of current monthly income because the Treaty has the force of domestic law. The Treaty is a compact between the United States and Canada. *Head Money Cases*, 112 U.S. 580, 598 (1884). While treaties create international obligations, they generally do not carry the force of domestic law unless they are either (i) self-executing or (ii) approved by Congress through implementing legislation. *Medellin v. Texas*, 552 U.S. 491, 128 S. Ct. 1346 (2008). A self-executing treaty is one that by its very terms is clearly intended to operate as domestic law. *Id*. The alternative is for the treaty to be enacted by Congress through implementing legislation. *Id.* In this case, the Treaty satisfies both of these requirements. It is self-executing because its plain language indicates it is intended to operate as domestic law. Article II of the Treaty specifies that the Social Security Act and the Internal Revenue Code are modified by the terms of the Treaty, as are any other laws that relate to Social Security benefits. Treaty, art. II, § 1(a), §§ 3-4. Congress also authorized the Treaty through implementing legislation. It was approved by Congress effective August 1, 1984. 42 U.S.C. § 433(e).

As the law of the United States excludes U.S. Social Security benefits from the calculation of current monthly income, that exclusion must be extended to include Canadian Social Security benefits as provided in the Treaty. The Treaty clearly provides that persons who reside in the territory of either nation shall receive equal treatment in the application of the laws of each nation with respect to social insurance retirement benefits. As the Debtors are not required to include income they receive from United States Social Security Retirement Insurance program in their calculation of current monthly income, they are entitled to equal treatment of their Canadian benefits under the Bankruptcy Code. The Trustee's argument that 11 U.S.C. § 101(10A) does not specifically expand the definition of current monthly income to exclude income similar to Social Security received by Debtors under international agreements or treaties is of no moment. The Treaty is a supreme law of the land entitled to enforcement with equal dignity with the United States Bankruptcy Code and the Social Security Act. The Treaty and the Bankruptcy Code must be read in harmony to the extent possible. *Whitney v. Robertson*, 124 U.S. 190, 8 S.Ct. 456 (1888). A court should always endeavor to construe a treaty and a statute so as to give effect to both if that can be done without violating the language of either. *Id.* at 194, 8 S.Ct. at 458. The 2005 amendments to the Bankruptcy Code,[7] which added the definitions and procedures for calculating disposable income, did not serve to nullify the Treaty. A court should not deem a treaty to be abrogated or modified by a later statute unless Congressional purpose was clearly expressed. *Cook v. U.S.*, 288 U.S. 102, 53 S. Ct. 305 (1933).

---

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (BAPCPA).

Accordingly, the Court will overrule the Trustee's Objection. The Debtors are not required to include their Canadian OAS retirement benefits in the calculation of current monthly income. The Court will confirm the Debtors' Chapter 13 Plan.

A separate order has issued.

ENTERED: August 26, 2014

        /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: August 26, 2014